UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE 461 7 TH AVE MARKET, INC.

               Debtor.

18-22671-RDD

Chapter 11

461 7TH AVE MARKET, INC., and
YOUNG IL PARK,

               Plaintiffs,

     vs.

DELSHAH 461 7TH AVENUE, LLC,
DELSHAH CAPITAL, and MICHAEL
SHAH,

               Defendants.

Adv. Pro. No. 18-08265-rdd

**DEBTOR'S SUPPLEMENTAL MEMORANDUM OF LAW
FOR EVIDENTIARY HEARING ON 9-5-18**

Michael S. Kimm, Esq. (MK4476)
KIMM LAW FIRM
333 Sylvan Avenue, Suite 106
Englewood Cliffs, New Jersey 07632
T: 201-569-2880
msk@kimmlaw.com
*Attorneys for Plaintiff*s

Rosemary Matera, Esq.
KURTZMAN MATERA, P.C.
664 Chestnut Ridge Road
Spring Valley, New York  10977
Tel 845-352-8800
rmatera@kmpclaw.com
Attorneys for Chapter 11 Debtor

## PRELIMINARY STATEMENT

Debtor/Debtor-in-possession/Plaintiffs 461 7th Ave Market, Inc., respectfully submits this supplemental memorandum of law in advance of the September 5, 2018, hearing.

## ARGUMENT

## I

**BECAUSE THE DOB'S APRIL 10 ISSUANCE OF "WORK PERMIT" CLEARLY SHOWS THAT THE DEBTOR'S ALLEGED "BREACHES," RAISED BY THE NEW LANDLORD AND WAIVED BY THE FORMER LANDLORD, ARE CAPABLE OF BEING RESOLVED, AND BECAUSE THE EQUITIES HEAVILY MILITATE IN FAVOR OF THE DEBTOR'S RELIEF, AND AGAINST FORFEITURE, THE COURT SHOULD GRANT THE MOTION TO ASSUME AND FASHION APPROPRIATE, RELATED RELIEF**

Justice Sherwood of the New York Supreme Court directed plaintiff to file a professionally-certified Alt-2 application for work permit. See Winter Decl.; Chang Decl.; 2-15-18 Transc. Justice Sherwood's order assumed that the landlord would not be involved in the permit process.

Instead of allowing plan examination review by the Department of Buildings (DOB), the landlord actively interfered with one or more written complaints, beginning with the Delshah Capital letter of March 8, 2018, which was preceded and proceeded by one or more non-written communication to the DOB.

The landlord does not want the premises being pegged for "eating establishment" and not for retail similar to fashion brands on Fifth Avenue. In other words, when plaintiff's term expires in 2022, it does not want to deal with an eating establishment; it wants to have

the premises "ready to go" for a pricey retail shop. This is the "lens" discussion spread on the record by Justice Sherwood at the end of the February 15, 2018, hearing, where he held that the tenant had the right to operate a restaurant until the end of term.

The plans filed by Jay Cho on February 27, 2018, approved on March 30, 2018, after the initial rounds of objection and back and forth would address the landlord's claim of fire safety with a sprinkler system in the staircase (as approved by MTA, the agency having authority over this building's sprinkler installation). The FDNY already issued a waiver for any issue with the roof. The DOB's Commissioner already approved the kitchen. See Chang Decl. & Exhibit 6A, 6B, 6C.

Yet the DOB has revoked the work permit; only to rescind the revocation; only to then revoke the work permit yet again, and install a STOP WORK order, all due to the "owner's statement that it did not approve the contractor."

The goal post is dragged by the landlord from Point A to Point B, only for the tenant to find that the goal post is no longer at Point B, but at Point C, and so on. The landlord wants to use the complex regulatory DOB process to secure an eviction by blaming a tenant that has been a model tenant.

Michaeh Shah, a real estate speculator with a billion dollar portfolio, wants the tenant to restore the condition back to some point in Year 2003 or 2009 or something else; for sure it is well before Michael Shah became the owner in May 2015. The Affidavit of Timothy O'Brien tells a clear story of all past alterations having been expressly or impliedly approved

by the "landlord," the legal predecessors of Michael Shah. Michae Shah and his entity Delshah 461 7th Avenue purchased the property "as is," as is shown by the contract from February 2015. See Chang Affidavit.

Now, so that Michael Shah can obtain a whopping windfall from Macy's, Michael Shah wants the tenant to be evicted on the theory that one or more alterations from the pre-May 2015 past was hypertechnically contrary to one of the archaic provisions of the 1968 NYC Building Code, despite his predecessor's approval and consent.

Forfeitures are disfavored by the courts, even where they are stipulated by the parties or set forth as part of the lease.[1] The landlord wants a forfeiture; it should be rejected.

After our August 2, 2018, 2PM hearing, we located the case that we believe had been mentioned by the Court, relating to a "parking garage":

---

1 Stipulations for forfeitures found in leases are not looked upon with favor by the courts. See Gillette Bros. v. Aristocrat Restaurant, 239 N.Y. 87, 145 N.E. 748 (1924); Vanguard Diversified, Inc. v. Review Co., 35 A.D.2d 102, 313 N.Y.S.2d 269 (2d Dep't 1970); 220 West 42 Associates v. Cohen, 60 Misc. 2d 983, 302 N.Y.S.2d 494 (App. Term 1969); Janks v. Central City Roofing Co., 271 A.D. 545, 67 N.Y.S.2d 355 (4th Dep't 1947). Leases containing forfeiture clauses are strictly construed against the party seeking to invoke them. See Gillette Bros. v. Aristocrat Restaurant, 239 N.Y. 87, 145 N.E. 748 (1924); Janks v. Central City Roofing Co., 271 A.D. 545, 67 N.Y.S.2d 355 (4th Dep't 1947). As a general rule, the law will not sanction a forfeiture of possession where no substantial injury occurs or where a mere technical breach of the lease is involved. See Helsam Realty Co., Inc. v. H.J.A. Holding Corp., 4 Misc. 3d 64, 781 N.Y.S.2d 554 (App. Term 2004); Harar Realty Corp. v. Michlin & Hill, Inc., 86 A.D.2d 182, 449 N.Y.S.2d 213 (1st Dep't 1982). In addition, courts have traditionally been reluctant to enforce a substantial forfeiture where a tenant's default was the result of inadvertence or neglect. See Birnbaum's Estate v. Yankee Whaler, Inc., 75 A.D.2d 708, 427 N.Y.S.2d 129 (4th Dep't 1980), order aff'd, 51 N.Y.2d 935, 434 N.Y.S.2d 994, 415 N.E.2d 982 (1980).

3

THE COURT: I had one involving a garage in Manhattan,
10 and it was even more tenuous than here. The Second Circuit
11 affirmed me. And it ended up that that lease was assumed.
12 Someone came in and cured the defaults.

Tr, at 63.

Annexed to this memorandum is Judge Drain's decision in 390 Park Avenue, LLC v. Park Ave. Garage, LLC, which was ultimately affirmed by the District Court, and then by the Second Circuit. See 390 Park Ave. Assocs, LLC v. Park Ave. Garage, LLC (In re Park Ave. Garage, LLC), 403 Fed. Appx. 555 (2d Cir. 2010). In that case, the cure came from not the debtor but by a guarantor and the cure went to the most fundamental aspect of a contractual relationship, the payment of consideration, or rent.

In our case, the Market has never been tardy with rent; has never suffered any DOB violation; and has never been derelict in any obligation. Not many landlords could write an affidavit of the kind written by Mr. O'Brien, stating that the Market has been a model tenant through the entire time upto May 2015.

To reiterate the essential elements, previously discussed in our memoranda, under Section 365 of the Code, subject to the bankruptcy court's approval, a debtor (not the landlord) has the option to assume or reject an unexpired lease at any time after the commencement of a bankruptcy case and before confirmation of the plan of reorganization. See 11 U.S.C. § 365(a), (d)(2). It is well established that assumption or rejection of an unexpired lease follows the "business judgment" rule, as applied by the debtor. See, e.g., Grp. of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 318 U.S.

4

523, 550, 63 S. Ct. 727, 87 L. Ed. 959 (1943); <u>ReGen Capital I, Inc. v. Halperin (In re U.S.</u> <u>Wireless Data, Inc.)</u>, 547 F.3d 484, 488-89 (2d Cir. 2008); <u>In re Rock 49th Rest. Corp., No</u>. 09-14557, 2010 Bankr. LEXIS 1223, 2010 WL 1418863, at *4 (Bankr. S.D.N.Y. Apr. 7, 2010).

"The act of assumption must be grounded, at least in part, in the conclusion that maintenance of the contract is more beneficial to the estate than doing without the other party's services." <u>Century Indem. Co. v. Nat'l Gypsum Co. Settlement Trust (In re Nat'l</u> <u>Gypsum Co.)</u>, 208 F.3d 498, 505 (5th Cir. 2000) (alteration and internal quotation marks omitted); see <u>Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)</u>, 4 F.3d 1095, 1099 (2d Cir. 1993) (limited purpose of motion to assume is to ensure "that valuable property is preserved and burdensome property is discarded").

Thus, in reviewing a debtor's business judgment to assume a lease, the bankruptcy court "plac[es] itself in the position of the . . . debtor-in-possession and determin[es] whether assuming [it] would be a good business decision or a bad one." <u>In re Orion</u>, 4 F.3d at 1099; see <u>COR Route 5 Co. v. Penn Traffic Co. (In re Penn Traffic Co.)</u>, 524 F.3d 373, 383 (2d Cir. 2008) ("This standard rather obviously presupposes that the estate will assume a [lease] only where doing so will be to its economic advantage . . . .")

Importantly:  "The Code does not condition the right to assume . . . on lack of prejudice to the non-debtor party," and "the disruption of non-debtors' expectations  of profitable business arrangements" is "common in bankruptcy proceedings." <u>In re Penn</u>

5

Traffic Co., 524 F.3d at 382.  "As long as assumption of a lease appears to enhance a debtor's estate, Court approval of a debtor in possession's decision to assume the lease should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code." Allied Tech., Inc. v. R.B. Brunemann & Sons, Inc. (In re Allies Tech., Inc.), 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982).  The motion to assume the unexpired lease should be granted.

The DOB issues raised by the new landlord are hyperbolic and collateral to the core of the lease agreement.  Those matters were being fully addressed by the Market and would have been completed, had it not been for the landlord's own sabotage "complaints" against is own tenant to the DOB.  The Court should hold that the landlord has engaged in breaches of the lease by breaching the duty of good faith and fair dealing; direct the landlord to execute all alteration applications that will enable the tenant to operate an eating establishment according to law; and hold that the Market will be entitled to a hearing on damages.

6

# CONCLUSION

For the foregoing reasons, the Court should grant Debtor's motion to assume the lease; deny the landlord's contrary motion, and grant further relief as proposed above.

Dated: August 29, 2018                          Respectfully submitted,

/s/ Michael Kimm

Michael S. Kimm, Esq.
msk@kimmlaw.com
KIMM LAW FIRM
333 Sylvan Avenue, Suite 106
Englewood Cliffs, New Jersey 07632
T: 201-569-2880
*Attorneys for Plaintiffs*

7

```
 1              UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------------X
      In Re:                              08-14354 (RDD)
 3
            PARK AVENUE GARAGE, LLC,       One Bowling Green
 4                                         New York, New York
 5              Debtor.                    June 1, 2009
 6    ------------------------------------X
 7         TRANSCRIPT OF MOTION TO ASSUME UNEXPIRED LEASE
               BEFORE THE HONORABLE ROBERT D. DRAIN
 8                UNITED STATES BANKRUPTCY JUDGE
 9
10    APPEARANCES:
11    For the Debtor:          ROBERT R. LEINWAND, ESQ.
                               Robinson, Brog, Leinwand, Greene,
12                              Genovese & Gluck, P.C.
                               1345 Avenue of the Americas
13                             New York, New York  10105
14    For Mr. Sopher:          MICHAEL BLUMENTHAL, ESQ.
                               Crowell & Moring, LLP
15                             590 Madison Avenue
                               New York, New York  10022
16
17    For the Landlord:        RALPH BERMAN, ESQ.
                               Epstein, Becker & Green, P.C.
18                             250 Park Avenue
                               New York, New York  10177
19
20    Court Transcriber:       CARLA NUTTER
21
22
23              REGENCY REPORTING, INC.
           Certified Court Reporters & Videographers
24      425 Eagle Rock Avenue      575 Madison Avenue
        Roseland, NJ 07068      New York, NY 10022
25       www.regencyreporting.net    (866) 268-7866
```

 1          THE COURT:  Please be seated.  Okay.  Park Avenue

 2   Garage.

 3          MR. LEINWAND:  Good morning, Your Honor.  Robert

 4   Leinwand of Robinson, Brog, counsel for the debtor Park Avenue

 5   Garage.

 6          Initially, I'd like to apologize for something for

 7   something that I may have misspoken on at the last hearing.  I had

 8   always believed that Mr. Sopher -- and I did communicate with Mr.

 9   Sopher from the initiation of the case through last week in

10   Florida.  Mr. Sopher does in fact suffer from a multiple myeloma

11   and I had believed, Your Honor, at the last hearing that he was

12   still in Florida.  Unbeknownst to me he was in New York at the time

13   and the supplemental objection that was filed is correct that I

14   misspoke and I apologize for that.                    `

15          It still does not impact adversely my statement that he

16   does suffer from an illness and he could not attend, physically,

17   this hearing at this time.  He is here in New York and next, I am

18   advised, that he is going to Little Rock, Arkansas for more

19   treatment and I just wanted to make the record clear and I

20   apologize for the misstatement, it was inadvertent at the time and

21   it's inadvertent today.  I just apologize for that.

22          In any event, at the last hearing Your Honor requested

23   that we continue this proceeding until today and that Mr. Sopher,

24   the guarantor of the obligation to the landlord of the debtor's

25   obligation pursuant to its executory contract, prepare a sworn

1  declaration under perjury which does two things; (1) acknowledges

2  his obligations pursuant to providing adequate protection of future

3  performance -- adequate assurance of future performance as well as

4  to declare under penalty of perjury that he has sufficient assets

5  or is in control of sufficient assets in order to pay the cure

6  amounts as well as to pay any deficiency that might arise

7  throughout the proceeding.  We have so filed and served that

8  declaration and believe that that demonstrates the ability of Mr.

9  Sopher to assist the debtor in paying the cure amount and also

10  providing adequate assurance of future performance.

11         THE COURT:  Okay.  Let me ask you -- tell me, again, why

12  is it that Mr. Sopher wants to do this?

13         MR. LEINWAND:  In the event -- my understanding is that

14  in the event that this lease is deemed rejected, then the

15  obligation of the guarantor will be the total obligation of the

16  balance reserved under the lease without any cap pursuant to the

17  Bankruptcy Code or any other limitation.  Under those

18  circumstances, absent a mitigation, he would also be obligated to

19  pay the obligation of Icon, the manager.  If the lease was rejected

20  the management agreement would be deemed rejected and he would have

21  to pay Icon a sum in excess of $100,000.00 as liquidated damages.

22  Also, he would be obligated for the balance of the lease pursuant

23  to his guaranty so that by assuming the lease he would limit his

24  obligations to the landlord.

25         Your Honor should be made aware that a judgment was

1    entered against Mr. Sopher as guarantor in the state court.  I am

2    advised that there is a hearing this afternoon at 2:30 pending a

3    determination of this Court as to the assumption as to what the

4    state court judge will do with respect of that judgment.  As of

5    today, while the judgment was entered on Friday morning at about

6    9:30, the execution of that judgment has been stayed pending this

7    afternoon's hearing and a determination by Your Honor.

8         So Mr. Blumenthal is here representing the guarantor.  I

9    have always been advised that the guarantor wished from the

10   initiation of the onset of this case that the lease be rejected.

11   As I mentioned at the last hearing -- I'm sorry, that the lease be

12   assumed.  As I mentioned at the last hearing he had desired -- the

13   desire of the debtor was simply to assume and assign the lease to a

14   third party so that the third party would be responsible for the

15   obligations in the lease and that did not work out.

16        We're now here at the eleventh hour or the 210th day of

17   this case and it is necessary for the debtor to obtain an

18   assumption of this lease so that the debtor will continue to have

19   its main asset and the benefit to the guarantor is that his damages

20   pursuant to the existing judgment and any potential judgment the

21   landlord would have would be limited.

22        THE COURT:  So it's not a favorable lease.  It's not an

23   above market lease -- I mean a below market lease.  Excuse me.

24        MR. LEINWAND:  At the moment we believe it is an above

25   market lease in the sense that we could not find any entity -- and

1    we looked -- who would take the lease from us at or more than or

2    even less than the amount we're paying.  So I believe that is in

3    fact an above market lease at this time.

4            THE COURT:  Okay.

5            MR. BLUMENTHAL:  Your Honor, if I just may add one or

6    two things.

7            Michael Blumenthal representing Jacob I. Sopher, who is

8    in fact one of the guarantors of this lease.

9            One of the additional reasons or rationales for

10   assumption is that as we're all aware as the real estate market

11   ramped up over the last five to seven years and now it's undergoing

12   -- at least in the commercial real estate markets -- some downturn,

13   the primary reason that there's a deficit is the increase in real

14   estate taxes which the tenant under the lease is responsible for.

15   If this lease is assumed there are ten years remaining.  If,

16   firstly, the revenues of the parking garage increase as well as if

17   there is in fact some relief with respect to the real estate taxes

18   which are passed through this lease may at some point in the future

19   become a profitable lease and, therefore, that's another reason why

20   the debtor as well as the guarantor would respectfully request that

21   it be assumed.

22           THE COURT:  Okay.  Is there a security deposit in

23   connection with the lease at this point?

24           MR. LEINWAND:  I don't think there's an existing

25   security deposit at this point, Your Honor.

6

```
 1          THE COURT:  Okay.  All right.  Counsel, do you have a

 2   power of attorney to speak for Mr. Sopher today to commit him to

 3   things?  For example, if I said I wouldn't approve this unless

 4   there were X dollars put up as a security deposit for X months rent

 5   or anything like that?

 6          MR. BLUMENTHAL:  Well, Your Honor, I'm here representing

 7   him as counsel.  I don't have power of attorney.  There is a

 8   representative from his office.  What we would respectfully request

 9   is that the order that Mr. Leinwand has proposed is that the

10   payments be made in five installments.  As Your Honor is aware, Mr.

11   Sopher has in fact supplemented the debtor throughout these

12   proceedings to make sure that the lease payments are current.  He

13   will continue to do so.  He has the wherewithal to continue to do

14   so.

15          I've been authorized if His Honor wishes to show His

16   Honor a financial statement in camera which reflects his ability to

17   do so.  It just is not something he wants to put on the record.

18          Without knowing what the Court would request I'm not

19   sure I could respond.  Could I just have one moment, Your Honor?

20          THE COURT:  Okay.

21                    (Pause in proceedings)

22          MR. BLUMENTHAL:  As I indicated, we would respectfully

23   request that we make the monthly payments to cure the arrears.  I

24   do know that, also, the order that Mr. Leinwand is proposing

25   contains a ten day notice provision that if there's a failure to
```

1   make the cure, the "monthly payments as well as the incremental

2   cure payments," and it's not cured, the lease would terminate or be

3   deemed rejected and so we think that what is being proposed is

4   eminently reasonable and we would respectfully request Your Honor

5   to grant the relief.

6          THE COURT:  Okay.  Mr. Leinwand, what is the end game in

7   this case?  If the lease is assumed what's the next step?

8          MR. LEINWAND:  If the lease is assumed, Your Honor, what

9   we intended to do was to await the end of the five month period to

10  make sure this Court retained jurisdiction so that if there was a

11  default and the default wasn't cured on ten day's notice there

12  would be no rope-a-dope [sic] or anything like that but that

13  counsel for the landlord could notice an order.  The only defense

14  that the debtor would have is that payment was made and so we would

15  be assuring payments made and in the event that payment was not

16  made, then Your Honor could enter an order rejecting the lease.

17         Subsequent to that five month period it was our belief

18  that we could either file a plan or enter into a structured

19  dismissal.  I believe that no other creditors who would not be paid

20  in full would be adversely effected or not agree to a structured

21  dismissal at that point in time, Your Honor, but that would be

22  subsequent to all of the arrearages as finally determined by this

23  Court or agreed by the parties were paid in full.

24         THE COURT:  Okay.  What is the monthly rent plus the

25  other charges under the lease?

1          MR. LEINWAND:  I believe it's somewhere in the

2     neighborhood of $63,000.00.

3          THE COURT:  Okay.

4          MR. BERMAN:  Your Honor, Ralph Berman of Epstein, Becker

5     & Green representing the landlord.

6          First of all, just as a housekeeping matter, on Friday

7     we electronically filed a supplemental objection.  I don't know if

8     the Court had an opportunity to see it --

9          THE COURT:  I did review that.

10         MR. BERMAN:  Very good.  Well, I guess to start with by

11    addressing the new material that's come up is when Your Honor asked

12    what the purpose of all of this was I heard a lot of explanation

13    that involves protecting Mr. Sopher.  I really still haven't heard

14    anything that has to do with the interests or the operation of the

15    debtor.

16         THE COURT:  Well, I asked what Mr. Sopher's purpose was

17    in doing this.

18         MR. BERMAN:  Well, I guess I understand Mr. Sopher's

19    purpose, I still don't understand what the debtor's purpose is.

20    The debtor is a shell entity that has a single asset that doesn't

21    even operate the garage that's at issue and Mr. Sopher is

22    essentially a guarantor who is seeking the protection of the

23    Bankruptcy Code in the name of his shell entity without actually

24    filing bankruptcy.  He has an obligation and the obligation is not

25    one that is modified in any way by the Bankruptcy Code and he's

1    trying to obtain the benefit of Bankruptcy Code protection without

2    actually having done the work of being in bankruptcy.

3         THE COURT:  I think you'd be better served not focusing

4    on the arguments that I already ruled against you on on the

5    dismissal point and focusing on adequate assurance of future

6    performance and cure.

7         MR. BERMAN:  Well, on the issue of adequate assurance

8    and cure, all I can say is that the statement that was provided by

9    Mr. Sopher is nothing more than a restatement of obligations he

10   already has and not only has already breached but is currently in

11   breach of.

12        The afternoon of the day we were last before Your Honor

13   I was in New York State Supreme Court where Mr. Sopher was seeking

14   to stay the entry of a judgment to pay the very·sums he is standing

15   here promising he will pay.  He has no intention of honoring his

16   obligations, that is a demonstrated fact.  The mere fact he's put

17   in another paper where he says, I'm good for it, is not adequate

18   assurance of anything.  The mere fact he puts in a piece of paper

19   that says, I have the assets, is not adequate assurance of

20   anything.  The State Supreme Court said, I will give you a stay,

21   secure the judgment.  He refused to.  If he didn't have the money

22   to secure the judgment in State Supreme how does he have the money

23   to secure adequate assurance here?

24        THE COURT:  Let me make sure -- I'm going to parse this

25   through.  Tell me if I've missed something.

1        You're making two arguments; the first argument is that

2   he doesn't have any intention to perform consistent with the

3   statute as evidenced by the fact that he hasn't performed his

4   guaranty.  There's an intention point.  You can't trust him.

5        MR. BERMAN:  That's correct, Your Honor.

6        THE COURT:  The second point is that you do not accept

7   the statement without additional evidence that he actually has the

8   assets even if he wanted to perform.  Is that also the argument

9   you're making?

10       MR. BERMAN:  That's correct, Your Honor.

11       THE COURT:  Okay.  It sounded like two pretty good

12  arguments given the facts here, Mr. Leinwand.

13       MR. LEINWAND:  Well, the trust argument is an

14  interesting argument and, again, I don't think Mr. Berman believes

15  that Mr. Sopher doesn't have the assets.  I think that the

16  principal of his client and Mr. Sopher go back a long, long, long

17  way -- many millions of dollars have passed hands both ways over

18  the years and this becomes more than a separate financial situation

19  but it's a flexing of muscle and a, I can get you before you get

20  me, and I think that is what one of the real problems is and it's

21  made it difficult for me and has taken me to the eleventh hour in

22  which to get what I think is a simple matter.

23       I think the "trust me" argument is over in the event

24  that he does not make a payment or the debtor doesn't make a timely

25  payment from now on because we're not in a state court, we're

1   before Your Honor and Your Honor has the commitment from the debtor

2   that it will pay the obligations in a timely manner and absent to

3   do that Draconian results and easy results follow through.  So the

4   "trust me" argument, I think, is a frustration argument that

5   landlord is having because the guarantor has frustrated the

6   collection of dollars, although that collection together with post-

7   judgment interest as awarded by the state court is going to be an

8   obligation and they're going to get the money.

9       The question of lack of ability to pay is another red

10  herring.  I think at the last hearing Mr. Berman did not indicate

11  that Mr. Sopher didn't have the ability to pay but it was "part of

12  a rope-a-dope" defense that Mr. Sopher was doing.

13      So, Your Honor, I think that --

14      THE COURT:  Well, do you agree with that?

15      MR. BERMAN:  No, Your Honor.  The point I made at the

16  last hearing and the point I made here is very simple.  Mr. Sopher

17  has a certain reputation -- many people in the world have a certain

18  reputation -- he runs garages in a bad economy through a series of

19  shell corporations.

20      I don't know if he has the money or not.  He has

21  certainly done nothing to establish it here.  We don't have to go

22  on his reputation or what we speculate he may have.

23      MR. LEINWAND:  Your Honor, I think Mr. Blumenthal made

24  an offer to show you --

25      THE COURT:  But that doesn't -- I'm not going to -- I

1   mean the landlord has to have an opportunity to test that.  Just

2   having me look at it in camera is not going to do it.

3          MR. LEINWAND:  I've seen it and, Your Honor -- I mean

4   I'll let Mr. Blumenthal -- I told Mr. Sopher on the phone on Friday

5   that if he came down here and testified it would be a slam dunk and

6   he said to me, physically, he could not physically come down here

7   before noon.  That was his comment to me and if in fact we have to

8   have his live testimony to indicate that he has sufficient dollars

9   in which to pay we can go do that.

10          I was not in state court, Mr. Blumenthal was on Friday

11   and Mr. Sopher's other counsel was in the court on Thursday with

12   Messrs. Allman and Berman and I'm advised at that point in time the

13   Judge was going to stay the entry of the judgment, however, while

14   he was determining what to do the judgment was entered and instead

15   of staying the entry of the judgment what he did was stay the

16   execution of judgment.

17          I think that it's --

18          THE COURT:  But I thought you said that was in light of

19   just giving me some time to deal with this today.

20          MR. LEINWAND:  That's correct.  It's in light of having

21   --

22          THE COURT:  It wasn't based on his financial performance

23   or anything like that?

24          MR. LEINWAND:  No.  The whole concern of Mr. Sopher was

25   paying twice.  His concern was that if he paid upon his guaranty

1   pursuant to the judgment he would have to pay again.  That's what

2   his concern was.  He didn't want to have to pay twice and,

3   therefore -- because the debtor had the arrearages and the debtor

4   would have to pay and that was his concern and that's why he wanted

5   a determination from this Court prior to a determination from the

6   state court and he wanted the two courts to meld together so that

7   the determination by this Court that he had five months to pay

8   would satisfy the obligation of the state court.

9          THE COURT:  But, you know, it makes me a little nervous

10  when he's asking for five months, then maybe he doesn't really have

11  the wherewithal to pay.

12         MR. LEINWAND:  I understand that.

13         MR. BLUMENTHAL:  Your Honor, if I might add one or two

14  items.

15         I was in state court on Friday, a place I generally

16  don't practice law, but Judge Stallman asked us after we presented

17  argument to the Court and indicated that he was in fact going to

18  stay entry of the judgment, he wanted to write the order and

19  indicated that he wanted us to come back this afternoon.  In my

20  opinion, it also indicated that if Your Honor gave the debtor five

21  months to cure he would, likewise, make rulings in the state court

22  to comport and be consistent with the time that the debtor would

23  have.

24         Just so Your Honor knows, the amount of the cure that is

25  the agreed upon cure is in excess in fact of the judgment that they

1   sought to obtain so, therefore, if the debtor is given five months

2   and has paid back over five months they will get more than the

3   amount in the judgment.  Likewise, if Your Honor determines that

4   the disputed portion of the cure is due or such amount is due that

5   would, likewise, be added to the payments that are being made.

6        When you indicate or you suggested, why does he want

7   five months, we have as is the case with many real estate

8   situations there are certain cash flow considerations.  Mr. Sopher

9   does have the wherewithal to pay it.  He's requesting that it be

10  paid back.  $500,000.00 is not an insignificant amount of money in

11  context of the monthly rental of $63,000.00 to pay it over five

12  months.  He does have the wherewithal to pay it, Your Honor.  There

13  is no gamesmanship going on here.  He's just along with the debtor

14  requesting some additional time to make the cure.

15       THE COURT:  Okay.  Judge Craig in her recent case in the

16  Fine Lumber case expresses a concern about protecting the landlord

17  if in fact the debtor defaults post-assumption and notes that it

18  would take, I think, three months to relet the premises there and

19  in light of that she required in addition to the one month's

20  security deposit that existed under that lease another two month's

21  security.  Has the landlord looked at reletting the premises here?

22       MR. BERMAN:  No, Your Honor, not at this point.

23       THE COURT:  Do you have any estimate of how long it

24  would take to find a replacement?

25       MR. BERMAN:  I honestly don't, Your Honor.  It's a

1   difficult economy.  It's a parking garage so it presents some

2   unique situations.  It's not just simple commercial space.

3          THE COURT:  It's acknowledged that it's not a favorable

4   lease so you'd probably be reletting at a lower amount.

5          MR. BERMAN:  Yes, so that seems almost certain both in

6   this economy and under the circumstances but I don't have any

7   figures or dates for you.

8          THE COURT:  Okay.

9          MR. BLUMENTHAL:  Your Honor, there had been

10  negotiations.  I believe Icon, who manages the garage, in fact

11  would lease it.  It may not be for the full amount of the lease.

12  There's some issue with regard to real estate taxes which Mr.

13  Sopher would still be liable for.  So we don't think that there is

14  an issue that it would be a lengthy period of time.  This is prime

15  real estate and --

16         THE COURT:  Well, there is a logical tenant -- you're

17  saying there's a logical tenant because there's -- the company

18  operating the garage itself.

19         MR. BLUMENTHAL:  That's correct, Your Honor.

20         MR. BERMAN:  Well, Your Honor, I will say that I do know

21  that it has been at least explained to us -- I have no personal

22  knowledge of this -- that the reason Icon is operating that garage

23  is because they acquired certain other Sopher garages and they are

24  doing it as part of the deal as an accommodation to Sopher.  So the

25  idea that they are readily available as a tenant if Sopher is not

1  on the scene, I just can't answer that question one way or the

2  other.

3          THE COURT:  Okay.

4          MR. BLUMENTHAL:  That is not a correct statement but --

5          THE COURT:  Well, let me just pose this to you.

6          What is the harm to the landlord of a situation where

7  the lease is assumed and the first payment or the first cure

8  payment isn't made and at that point the stay is lifted?

9          MR. BERMAN:  Your Honor, if the payments are made and

10  the stay is lifted, I guess the landlord can minimize the damage

11  done.

12          I would like to note, though, that if adequate assurance

13  consisted simply of saying, if we let them assume we'll see if they

14  honor it and then if they don't they're out, then there really is

15  no adequate -- there's no extra component to adequate assurance.

16  Adequate assurance is supposed to be an assurance to the landlord

17  that that's probably not going to happen, not that that's your best

18  scenario and so I would argue that if we're sitting here talking

19  about, well, there really is no assurance of future performance but

20  you'll be okay because if they don't perform they'll be out, then

21  we've basically written the whole requirement of adequate assurance

22  out of the Bankruptcy Code.  That can always be done with a lease.

23  Every lease should then be assumed when requested.  There's an

24  extra hurdle there, there's extra protection for the landlord and

25  that's what we're seeking here.

1      We're going to be back here.  We know it.  We're going

2  to be back with Sopher.  If he stays under the jurisdiction of the

3  Court for five months and he acts good we know we're going to be

4  back with him.  We want to be rid of him and we want to be rid of

5  him soon.

6      MR. LEINWAND:  Your Honor, the economics of it is clear.

7  They have -- by permitting the debtor to assume the lease they will

8  get more money in the next five months or the balance of the lease

9  than they would, probably, under any other scenario.

10      What they want to do is punish the guarantor for not

11  coming forward earlier and satisfying the judgment.  We have

12  presented to Your Honor the ability to cure and the ability to cure

13  if we don't do, not only will they lift the stay but Your Honor has

14  the opportunity and we have consented to Your Honor entering an

15  order deeming the lease to be rejected.  I think that's --

16      THE COURT:  I think I'm going to need to have the

17  accountant's certificate introduced into evidence.

18      MR. LEINWAND:  The concern that Mr. Sopher had was by

19  making public his financings he was very concerned that it would be

20  utilized against him by landlords and landlords' attorneys.  This

21  is what I heard.  I can't speak to putting it into evidence, Your

22  Honor.

23      THE COURT:  But I mean if that's because he's not in

24  good financial condition then --

25      MR. LEINWAND:  It's not because he's not in good

1   financial condition.  I think it's because he is in good financial

2   condition that he doesn't want to have a road map for --

3          MR. BERMAN:  Well, his judgment creditors might be able

4   to find the assets.

5          MR. BLUMENTHAL:  Your Honor, if I may just add one other

6   thing.

7          I think counsel to the landlord indicated what they

8   really want when he said they wanted to be "rid of him."  They want

9   to terminate this lease and at the same time collect on a guaranty

10  and at the same time seek another tenant.  Frankly, under the Code

11  and the case law under the Code, when adequate assurance is the

12  issue, the adequate assurance is generally the adequate assurance

13  that existed at the time of entering into the lease.  At the time

14  they entered into the lease they accepted this tenant --

15         THE COURT:  No, that's not right.  It's adequate

16  assurance as of the date of the motion.  Conditions may completely

17  change between the date of the lease and the date of the motion.

18  They believe their tenant was able to pay too.

19         MR. BLUMENTHAL:  Your Honor, they knew that the tenant

20  was an entity that was a special purpose entity owning this garage

21  and they accepted the guaranty of Mr. Sopher.

22         He is ready, willing and able, Your Honor, and as I

23  indicated we would show the financial statements to His Honor in

24  camera.  We didn't want it plastered over the record and I think

25  the fact that the proposal which is if he misses a payment, then

1   the lease would be automatically terminated is really protecting

2   the landlord to protect against what they're calling gamesmanship.

3          I think that it's a fair resolution and, frankly, every

4   payment has been made since the filing of this petition.  The

5   deficits of the monthly payments have in fact been made up.  The

6   lease is current on a post-petition payment.

7          MR. LEINWAND:  Except the May payment.  The May payment

8   has not been paid.

9          MR. BLUMENTHAL:  But hasn't that been -- the May payment

10  was paid.

11         MR. LEINWAND:  Was paid.  I'm sorry.

12         MR. BERMAN:  We have no record of the May payment, Your

13  Honor.

14         MR. BLUMENTHAL:  Mr. Orvack is in -- it has made

15  payment?

16         MR. ORVACK:  It was made --

17         THE COURT:  But am I right that most of those payments

18  have been made by the debtor and Mr. Sopher has been making up the

19  difference?

20         MR. LEINWAND:  That is correct, Your Honor.  The debtor

21  receives essentially the base rent from Icon and pays the

22  difference being the taxes and has continued to pay the difference

23  throughout the case in a timely manner.

24         MR. BLUMENTHAL:  Pursuant to Your Honor's prior order.

25         THE COURT:  Okay.  All right.  Anything else?

 1          MR. BERMAN:  Well, Your Honor, if I may just concerning

 2   this so we're clear on the situation we're dealing with.

 3          On Friday night we were also informed that Mr. Sopher's

 4   state court counsel is appearing in State Supreme this morning to

 5   make yet another order to show cause application, the nature of

 6   which has not been made clear to us yet.  So the gamesmanship

 7   continues while the promises that the gamesmanship will end have

 8   not.

 9          THE COURT:  Well, I'm really less worried about the

10   gamesmanship since I can control that with an order as adequate

11   assurance of future performance and, to me, that's a significant

12   issue here given the record.

13          So the debtor is essentially a single asset entity; it

14   owns -- or it is the tenant under a lease and then subleases the

15   leased premises for the purpose of the operation of a parking

16   garage at 390 Park Avenue.

17          It has moved to assume the lease which under the

18   Bankruptcy Code would expire today, 210 days having run at the end

19   of today from the start of its Chapter 11 case.  The landlord 390

20   Park Avenue Associates has objected motion asserting that the

21   debtor is unable to satisfy the requirements of Section 365(b) of

22   the Code.  The Bankruptcy Code permits a debtor-in-possession to

23   assume an unexpired lease if it does three things; first, cures or

24   provides or adequate assurance that it will promptly cure a default

25   under the lease and we're talking about monetary defaults here so

1    the rest of 365(b)(1)(a) is inapplicable or irrelevant, secondly,

2    it compensates or provides adequate assurance that the debtor will

3    promptly compensate the landlord for any actual pecuniary loss to

4    such party resulting from the default and, third, provides adequate

5    assurance of future performance under such lease.  Again, we're

6    talking about monetary defaults here and future performance under

7    rental provisions of the lease.  Those are the defaults that the

8    landlord has raised and contends that the debtor will not be able

9    to perform either in respect of curing the defaults or providing

10   adequate assurance of future performance.

11        The debtor acknowledges that it, itself, is unable to

12   perform the ongoing obligations under the lease in full.  It

13   acknowledges, more specifically, that its income from the parking

14   garage is insufficient to pay all of the amounts coming due on a

15   monthly basis under the lease when one takes into account among

16   other things the tax obligations under the lease.  If it is not

17   able even to perform the monthly obligations under the lease it's

18   clearly not able to pay the amount of cure to the landlord.  That

19   amount is in dispute, however, the debtor acknowledges that,

20   clearly, almost $500,000.00 would be owed as cure.  The landlord

21   contends, based upon a judgment that it received some time ago and

22   its calculation of its attorneys fees which it contends are

23   provided for as rent under the lease, that it is owed in excess of

24   $700,000.00 of cure.

25        The debtor proposes to do two things to satisfy its

1    burden under Section 365(b); first, it proposes to have its

2    principal, who also guarantied the lease, Jacob Sopher, to make up

3    the cure payments over a period of five months and, secondly, have

4    Mr. Sopher make up any shortfall in terms of the monthly payments

5    coming due under the lease.  As to the latter point, Mr. Sopher has

6    done that during the course of the Chapter 11 case.  The debtor has

7    remained current on the lease since the petition date with the

8    assistance of Mr. Sopher and the debtor would propose that that

9    would continue.  The debtor also acknowledges that the cure will be

10   whatever the Court determines to be the cure, that is the proposal

11   to have Mr. Sopher pay the cure payments is not conditioned upon or

12   contingent upon the Court determining the cure comes in within a

13   specified amount but, rather, that Mr. Sopher will take the risk

14   that the landlord is correct and that the cure is substantially

15   higher than the amount that the debtor contends it is.

16        Given that concession or that agreement I have not done

17   more than try to read the fine print of the lease and determine

18   whether in fact there would be a basis for the higher amount

19   claimed by the landlord as well as looked at the underlying

20   judgment and it appears to me that there is a legitimate issue and

21   that the cure may well be substantially more than the slightly

22   under $500,000.00 amount that the debtor acknowledges.

23        In support of the proposed cure and adequate assurance

24   of future performance by the debtor, Mr. Sopher has submitted an

25   affidavit dated May 28, 2009 in which he states that he is aware of

1   the debtor's burden in assuming the lease and, more specifically,

2   that the debtor must cure all arrearages and provide the landlord

3   with adequate assurance of future performance.  He then states that

4   he has agreed to make certain that the debtor will have the

5   wherewithal to cure all arrearages which are finally determined by

6   the Court over a five month period and that he will make the

7   appropriate capital infusions to the debtor to make certain that

8   the arrearages are cured and that in the future the debtor will

9   have sufficient dollars to timely make its payments to the landlord

10  pursuant to the terms of the lease.  Thus, I now do have his

11  commitment under oath that he would in fact make the payments that

12  the debtor has contended he will make.

13       He then states in Paragraph 6 of his affidavit that he

14  has control of and access to more than sufficient liquid assets to

15  pay all of the arrearages pursuant to the lease as determined by

16  the Court and will have sufficient assets to pay any differential

17  between the debtor's receipts and its obligations pursuant to the

18  lease throughout the balance of the terms of the lease.

19       He then states, "If the Court requires I will submit a

20  certified accountant's affidavit under seal that my assets are more

21  than sufficient to pay any obligations which the debtor must make

22  in order to cure the arrearages and assure the landlord of future

23  payments pursuant to the lease."  He's not present to testify

24  today.  It's stated that his health prevents his testimony,

25  although, I have no evidence, frankly, before me of that other than

1    counsel's representation.

2          Secondly, he is not prepared or apparently has not

3    instructed his counsel to be prepared to submit the accountant's

4    certificate that he references in his affidavit except for in

5    camera review.  Therefore, it's not available to be tested by the

6    landlord and evaluated on the record.  The rationale for Mr.

7    Sopher's unwillingness to do this raises a serious concern with me

8    in that it appears that Mr. Sopher has a concern about reviewing

9    his net worth in public.

10          The landlord also points out that Mr. Sopher as I noted

11    previously guarantied the lease and that he refused to honor the

12    guaranty and that the landlord had to obtain a judgment against him

13    in respect of the guaranty which it has done and that he continues

14    to seek to delay payment under the guaranty.          `

15          The debtor responds by saying that the reason he's

16    seeking to delay payment is that he would like the entire matter

17    resolved pursuant to an order of this Court authorizing assumption

18    of the lease and Mr. Sopher's payment pursuant to his undertakings

19    to this Court which is fairly credible.  On the other hand, given

20    the record before me, notwithstanding counsel's statement at the

21    prior hearing -- counsel for the landlord's statement at the prior

22    hearing that it appears that Mr. Sopher is a wealthy man.  I have

23    serious concerns about Mr. Sopher's undertaking.  Those are based

24    on three things; first, the fact that he's not been willing to

25    share or submit in public to a review of his financial wherewithal

1  on the record, secondly, the fact that he's not proposing a cure

2  immediately but rather one over five months.  It appears to me

3  based on counsel's remarks that that five month period is not

4  premised upon what one would assume to be a reasonable time to

5  determine the amount of cure but, rather, it's based upon cash flow

6  issues that Mr. Sopher has and, thirdly, I do have some concern

7  about the fact that Mr. Sopher has, first, in respect of exerting

8  his control of the debtor and, secondly, in his own account

9  resisted performing obligations to the landlord such that the

10  landlord had to obtain a judgment not only against the debtor but

11  also against Mr. Sopher individually after he did not perform his

12  guaranty.

13        The courts have found that the meaning of the phrase

14  "adequate assurance of future performance" is one that should be

15  given a practicable and pragmatic instruction based on the facts

16  and circumstances of each case.  Ultimately, the inquiries whether

17  the rent will be paid going forward as well as the other lease

18  obligations being met, as noted by a number of courts, the emphasis

19  is on protection of the landlord, not on giving the landlord

20  improvement of its position.  In determining whether adequate

21  assurance of future performance has been shown courts have

22  considered at least the following factors; the debtor's payment

23  history, the presence of a guaranty, the presence of a security

24  deposit, the evidence of profitability, whether there's any plan

25  that would earmark money for the landlord, the general outlook of

1  the debtor's industry and whether the unexpired lease is at or

2  below the prevailing rate.  Most of these factors here favor the

3  landlord as opposed to the debtor.  The debtor's payment history is

4  one where it's acknowledged that the debtor on its own is not able

5  to perform the lease going forward.  There's no security deposit.

6      Again, the lease itself is not profitable and the

7  debtor, accordingly, is not profitable since the lease is its only

8  asset and the lease is not at or below the prevailing rate.  It's

9  not a favorable lease.  The debtor has been unable to market the

10  lease to a third party during the course of this case which it had

11  attempted diligently to do.  That puts an enormous amount of burden

12  on the presence of the guaranty offered up by Mr. Sopher.

13      I understand the rationale for his undertaking to cure

14  the defaults and provide for adequate assurance of future

15  performance.  It's clearly more economical for him to maintain the

16  value that's in the lease and make up the shortfall as opposed to

17  being liable for the entire rejection claim.  So he clearly does

18  have a motive to perform and it's not a motive that changes with

19  economic conditions since, ultimately, he's looking at his own

20  liability for a rejected lease as the alternative to assuring

21  future performance.  On the other hand, while I have confidence in

22  his motive and while I believe that the debtor has in its

23  willingness to provide a conditional order, providing that the stay

24  will be lifted if the payments are not made, minimized the risk to

25  the landlord it seems to me that based on this record which is

1   scant with hard information of Mr. Sopher's ability to pay, one

2   where I'm essentially taking his word for it and I'm not prepared

3   to do that, it seems to me given the fact that the lease is

4   underwater that the landlord should have additional protection in

5   the event that Mr. Sopher chooses not to pay or is unable to pay

6   going forward.

7           The monthly charge is roughly $63,000.00.  I believe

8   that as a condition to being able to assume the lease that Mr.

9   Sopher should be required to post a deposit of three month's rent

10  in addition to the undertakings that he's made in the affidavit

11  that he submitted to me and the conditional order that the debtor

12  has offered up.  If he's not able to come up with that sum, then it

13  seems to me there's not adequate assurance of future performance

14  and if he's not able to come up with that sum within the week, then

15  the stay will be lifted.

16          MR. LEINWAND:  Your Honor, we understand what you just

17  said.

18          THE COURT:  I think, frankly, you should confer with him

19  about this because there's no reason for the debtor to take on an

20  administrative expense burden if you can't do that.

21          MR. LEINWAND:  I understand that.  We will confer with

22  him.  My understanding is that at this point in time he has no

23  other option but to agree with that and I anticipate running back

24  to my office and changing the order a little bit to add this

25  condition of the three month's posting of security within one week

1    otherwise the stay gets lifted from the order and I would ask Your

2    Honor if I did that would Your Honor entertain such an order if I

3    was to --

4            THE COURT:  I would under the authority of among other

5    cases, In Re:  N. Fine Lumber Company, Inc., 383 BR 565, Bankruptcy

6    E.D., NY 2008.

7            MR. LEINWAND:  Thank you, Your Honor.  I will speak to

8    your chambers to see if I can expedite it by electronic mailing to

9    you the proposed order and I appreciate your determination based

10   upon the scant record and I apologize for making it such a record

11   but I understand what the situation is and, hopefully, all parties

12   will come out of here better off.

13           THE COURT:  Okay.

14           MR. BLUMENTHAL:  Your Honor, just one clarification.

15           The posting of the three month's security deposit, could

16   that be posted in Mr. Leinwand's care as co-counsel?

17           THE COURT:  No, it should be a true security deposit

18   with the landlord.

19           MR. BLUMENTHAL:  But an escrow account.

20           THE COURT:  Well, why would it be in escrow as opposed

21   to with the landlord?

22           MR. BLUMENTHAL:  I mean I understand what you're saying

23   --

24           THE COURT:  Well, the purpose of this is so that the

25   landlord has real money to support it if Mr. Sopher walks.

1        MR. BLUMENTHAL:  I think that's it.  I think it's a

2    security deposit in the event that payments are not made pursuant

3    to the order as well as the lease and in the event that those

4    payments are made at the end of the lease it will be returned to --

5        THE COURT:  Right.  This is supposed to continue more

6    than five months.  This is supposed to continue for the duration of

7    the lease.

8        MR. BLUMENTHAL:  That's correct, Your Honor.

9        THE COURT:  Okay.

10        MR. BLUMENTHAL:  Thank you, Your Honor.

11        MR. BERMAN:  Your Honor, if I may just one thing.

12        In rendering your decision -- I don't think it effects

13    the decision at all -- but you mentioned that our proposed cure

14    amount was seven hundred some odd thousand dollars, it's actually

15    nine hundred some odd thousand in various categories.

16        THE COURT:  You're right.  It was higher.

17        MR. BERMAN:  So I just wanted to make sure the record

18    was clear on that.

19        THE COURT:  That's fair.

20        MR. LEINWAND:  I think Your Honor said in excess of

21    seven.  I think is in excess of seven --

22        THE COURT:  Well, it seemed to me -- I was focusing on

23    amounts that -- there's a very strong possibility it's going to be

24    in excess of the roughly 480 or 490 that the debtors have and

25    whether it goes all the way to 900 is another issue but it's a

1    significant number.

2            MR. LEINWAND:  We understand.  Thank you, Your Honor.

3            THE COURT:  Okay.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              C E R T I F I C A T I O N

 2

 3         I certify that the foregoing is a transcript from

 4    an electronic sound recording of the proceedings in the

 5    above-entitled matter taken on June 1, 2009, except where,

 6    as indicated, the Court has modified the transcript.

 7

 8

 9

10

11

12                                              June 2, 2009

13    CARLA NUTTER                              DATE

14

15

16

17

18

19

20

21

22

23

24

25
```

REGENCY REPORTING, INC.    (866) 268-7866
www.regencyreporting.net